IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JEFFERY LEE HAMRICK                                                                    PLAINTIFF

v.                                    NO. 4:16-cv-00269 PSH

STEVE LOPEZ, DAVID BUFFORD,                                                    DEFENDANTS
MARGIE GRIGSBY, and JOHN STALEY

MEMORANDUM OPINION AND ORDER

INTRODUCTION. The defendants in the case at bar have filed the pending motion for summary judgment. See Document 14.[1] For the reasons that follow, the motion will be, and is, granted.

PLEADINGS. Plaintiff Jeffery Lee Hamrick ("Hamrick") began this case by filing a complaint pursuant to 42 U.S.C. 1983. Hamrick joined Steve Lopez ("Lopez"), David Bufford ("Bufford"), Margie Grigsby ("Grigsby"), and John Staley ("Staley") in their official and individual capacities as officials with Lonoke County, Arkansas. Hamrick alleged that while he was incarcerated in the Lonoke County, Arkansas, Detention Center ("Detention Center") on an alleged parole violation, the following occurred:

---

[1] The defendants appear to have filed their motion pursuant to Federal Rule of Civil Procedure 56. The rule provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

> [In February of] 2015, I was incarcerated in Lonoke [County] Detention Center at which I was a [trustee]. I was tested at the beginning of March for [tuberculosis] and the results came back negative by Dr. Lisa Dillon. Between the months of June and July, there were five Hispanic men housed up front that had tested positive for [tuberculosis] and were being treated. As a [trustee], it was my duty to clean their cells. I was not provided a respirator and there were no [tuberculosis] lights or filters throughout the entire facility. I came to [the Arkansas Department of Correction in August of] 2015 to Malvern Diagnostic Center where I was informed that I had tested positive for [tuberculosis] and was confirmed with a chest x-ray. The following nine weeks I was treated with a vaccination.

See Document 2 at CM/ECF 4. Hamrick asked that the defendants be ordered to pay him monetary damages.

The defendants thereafter filed the pending motion for summary judgment. They asked that the complaint be dismissed and offered the following reasons why:

> [Hamrick's] complaint does not state facts to support an "official capacity" claim against the Defendants. In short, the complaint does not refer to any custom, policy or official practice at the Lonoke County Detention Center that would even minimally [pass] muster as an official capacity claim under [42 U.S.C.] 1983. Furthermore, Defendants' actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known, therefore the Defendants are entitled to qualified immunity. And, the undisputed facts do not demonstrate how each individual Defendant subjectively knew of an excessive risk to [Hamrick's] health or safety and then disregarded it. In other words, the undisputed facts do not demonstrate the Defendants acted with deliberate indifference. Finally, [Hamrick] is unable to prove he acquired the [tuberculosis] germs at the detention center, which is fatal to his claim.

See Document 15 at CM/ECF 7.

Hamrick was notified of his right to file a response to the defendants' motion for summary judgment and was given fourteen days from February 24, 2017, to do so. He filed nothing in response to the motion, and the time for doing so has now passed.

FACTS. The defendants accompanied their motion for summary judgment with a statement of material facts as required by Local Rule 56.1(a). Hamrick filed nothing in response. Because he did not controvert the facts contained in the defendants' statement, the facts set forth in the statement are deemed admitted. See Local Rule 56.1(c). The defendants' statement, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute. Those facts are as follows:

1. Beginning on February 17, 2015, and continuing through August 21, 2015, Hamrick was incarcerated in the Detention Center on an alleged parole violation. See Document 2 at CM/ECF 3; Document 16 at CM/ECF 1.

2. During that period, Staley was the Lonoke County, Arkansas, Sheriff; Lopez was the Detention Center Administrator; and Bufford and Grigsby were Detention Center employees. See Document 2 at CM/ECF 1-2; Document 16, Exhibit A at CM/ECF 1.

3. The defendants were not medical professionals and provided no medical care to inmates at the Detention Center. See Document 16 at CM/ECF 1.

4. The inmates' medical care was provided by representatives of AR Care, a private health care company, and Detention Center officials relied upon the medical advice of the AR Care representatives. See Document 16 at CM/ECF 1.

5. At some point during Hamrick's incarceration, the Detention Center came to house inmates who were positive for, and being treated for, tuberculosis. See Document 16 at CM/ECF 1.

6. Tuberculosis is caused by a bacteria that manifests itself as either a latent tuberculosis infection or tuberculosis disease. See Document 16, Exhibits D, E.

7. A person with a latent tuberculosis infection has no symptoms, does not feel sick, cannot spread the bacteria to other people, but may develop tuberculosis disease if not treated. See Document 16, Exhibits D, E.

8. Once the tuberculosis bacteria becomes active, a person is considered to have tuberculosis disease; it can cause serious symptoms and is capable of being spread to other people. See Document 16, Exhibits D, E.

9. The Court assumes for purposes of this Memorandum Opinion and Order that the inmates who were positive for tuberculosis were positive for tuberculosis disease.

10. Hamrick alleges, and the Court accepts as true, that he was not one of the inmates who was positive for tuberculosis disease as he had previously been tested and cleared of the tuberculosis bacteria. See Document 2 at CM/ECF 4.

11. The AR Care representatives advised Detention Center officials to segregate the inmates who were positive for tuberculosis disease and require the inmates to wear masks over their faces. See Document 16 at CM/ECF 1-2.

12. Detention Center officials followed the advice; they segregated the inmates and required them to wear masks over their faces. See Document 16 at CM/ECF 1-2.

13. The AR Care representatives never recommended that Detention Center officials or trustees wear masks over their faces when in contact with the inmates who were positive for tuberculosis disease. See Document 16 at CM/ECF 2.

14. As a result, Detention Center officials and trustees did not wear masks over their faces when in contact with the inmates who were positive for tuberculosis disease.

15. During the course of Hamrick's incarceration, he served as a trustee. See Document 16 at CM/ECF 1.

16. He alleges, and the Court accepts as true, that one of his responsibilities was to clean the cells housing the inmates who were positive for tuberculosis disease. See Document 2 at CM/ECF 4.

17. He alleges, and the Court accepts as true, that he did so without a respirator or any other type of protective equipment. See Document 2 at CM/ECF 4.

18. The Detention Center had tuberculosis lights attached to its ventilation system, but the lights were not fully functional. See Document 16 at CM/ECF 2.

19. Hamrick was eventually transferred to the custody of the Arkansas Department of Correction where he underwent an initial health assessment. See Document 16 at CM/ECF 2.

20. He did not report any active tuberculosis symptoms at that time, and none were noted. See Document 16 at CM/ECF 2.

21. As a part of the assessment, he was tested for the presence of the tuberculosis bacteria, and the test results were positive. See Document 16 at CM/ECF 2.

22. He then underwent a chest x-ray, and a radiologist interpreted the results of the x-ray to be as follows:

> Results: There is no tuberculosis. The lungs are free of active pulmonary disease. The mediastinum shows no adenopathy or mass. The heart is normal and the osseous structures are also normal. There is no active disease.
>
> Conclusion: Normal chest with no evidence of tuberculosis.

See Document 16, Exhibit C at CM/ECF 9.

23. Hamrick has a latent tuberculosis infection and, as a precaution, was started on a "medication [tuberculosis] protocol." See Document 16 at CM/ECF 2.

ANALYSIS. Liberally and fairly construing Hamrick's pro se complaint, he does not allege that the defendants violated his constitutional rights when they allowed him to serve as a trustee. He does not alleges that his constitutional rights were violated when he was asked, as a part of his job as a trustee, to clean cells at the Detention Center or that his constitutional rights were violated when he was asked to clean the cells of inmates who were positive for tuberculosis disease. Hamrick additionally does not allege that his constitutional rights were violated when the defendants failed to discover that he had contracted a latent tuberculosis infection and did not treat him for the infection. Liberally and fairly construing his complaint, he alleges that the defendants failed to provide him with adequate protective equipment when cleaning the cells of the inmates who were positive for tuberculosis disease.

A convicted inmate's challenge to the conditions of his prison work assignment is analyzed under the Eighth Amendment. See Kulkay v. Roy, 847 F.3d 637 (8th Cir. 2017).[2] A viable challenge requires the inmate to make a two-part showing, the first part of which is objective and the second part of which is subjective. The two-part showing is as follows:

> First, the inmate must show the alleged violation is "objectively [and] sufficiently serious." [Citation omitted]. An alleged violation is "objectively [and] sufficiently serious" when the inmate "is incarcerated under conditions posing a substantial risk of serious harm." [Citations omitted]. …
>
> Second, the inmate must show the defendant official acted with a "sufficiently culpable state of mind." [Citations omitted]. This subjective inquiry is "analyzed in light of the specific claim raised." [Citation omitted]. In a case challenging the conditions of confinement, the requisite state of mind is " 'deliberate indifference' to inmate health or safety." [Citations omitted]. "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." [Citation omitted]. This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " [Citations omitted].
>
> This court has repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference. …

---

[2]  Claims asserted by pre-trial detainees are typically analyzed under the Fourteenth Amendment. See Ingram v. Cole County, 846 F.3d 282 (8th Cir. 2017) (in evaluating constitutionality of pre-trial detainee's conditions of confinement, proper inquiry is whether conditions amount to punishment.) "The Due Process Clause prohibits any punishment before someone is adjudicated guilty." See Id. at 285. [Emphasis in original].

In this instance, Hamrick alleges, and the Court accepts, that he was incarcerated in the Detention Center on an "alleged parole violation." See Document 2 at 3. Because he had previously been adjudicated guilty and was being incarcerated for allegedly violating his parole, he was not a pre-trial detainee but was instead a convicted inmate. His claims are therefore analyzed under the Eighth Amendment.

> In contrast to negligence, "deliberate indifference requires a highly culpable state of mind approaching actual intent." [Citation omitted]. "In the prison work assignment context, prison officials are deliberately indifferent when they knowingly compel 'an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful.'" [Citations omitted]. The defendant-official's state of mind "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" [Citations omitted].

See Kulkay v. Roy, 847 F.3d at 642-643.

Hamrick alleges that the defendants violated his constitutional rights when they failed to provide him with adequate protective equipment when cleaning the cells of the inmates who were positive for tuberculosis disease, thereby causing him to contract a latent tuberculosis infection.[3] Applying the law to the facts of this case, the Court finds that his claim warrants no relief. The undersigned so finds for the following reasons.

First, Hamrick cannot obtain monetary damages against the defendants in their official capacities. It is axiomatic that an official capacity claim against a county employee is a claim against the county itself, see Liebe v. Norton, 157 F.3d 574 (8th Cir. 1998), and requires proof of an official custom, policy, or practice giving rise to the alleged constitutional violation, see Johnson v. Blaukat, 453 F.3d 1108 (8th Cir. 2006). Here, Hamrick has offered no proof that he was compelled to work without adequate protective equipment because of an official custom, policy, or practice.

---

[3] The defendants maintain that Hamrick is unable to prove he acquired the tuberculosis bacteria while incarcerated in the Detention Center. The Court assumes, arguendo, that he contracted the latent tuberculosis infection while incarcerated in there.

Second, assuming that the alleged violation is objectively and sufficiently serious, Hamrick cannot show that Staley, Lopez, Bufford, or Grigsby acted with a sufficiently culpable state of mind, and Hamrick cannot prevail against them in their individual capacities. The defendants were not medical professionals. The inmates' medical care was provided by representatives of AR Care, and Detention Center officials relied upon the medical advice of the AR Care representatives. Detention Center officials followed the advice of the AR Care representatives once it was learned that there were inmates who were positive for tuberculosis disease. Detention Center officials segregated the inmates who were positive for tuberculosis disease and required the inmates to wear masks over their faces. The AR Care representatives never recommended that Detention Center officials or trustees wear masks over their faces when in contact with the inmates who were positive for tuberculosis disease.

In hindsight, Staley, Lopez, Bufford, and Grigsby should have provided Hamrick with some type of protective equipment as he was being exposed to the tuberculosis bacteria. The defendants' state of mind is measured, though, by their knowledge at the time in question, not in hindsight. They could and did reasonably rely upon the advice, or lack thereof, given by AR Care representatives during the period Hamrick was cleaning the cells and compel him to clean them without protective equipment. It is also not insignificant that Detention Center officials themselves were not wearing protective equipment, and the officials undoubtedly had some contact with the inmates who were positive for tuberculosis disease.

CONCLUSION. Given the foregoing, there is no genuine dispute as to any material fact. Staley, Lopez, Bufford, and Grigsby are entitled to judgment as a matter of law, and their motion for summary judgment is therefore granted.[4] Hamrick's complaint is dismissed, all requested relief is denied, and judgment will be entered for the defendants. The dismissal of Hamrick's complaint counts as a "strike" for purposes of 28 U.S.C. 1915(g), and the Court certifies that an in forma pauperis appeal taken from this memorandum opinion and order and the accompanying judgment is considered frivolous and not in good faith.

IT IS SO ORDERED this 3rd day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] The undersigned has not specifically addressed Staley, Lopez, Bufford, and Grigsby's assertion of qualified immunity. The undersigned has not done so because Hamrick has failed to show that the facts, viewed in the light most favorable to him, demonstrate the deprivation of a constitutional or statutory right. See Saylor v. State of Nebraska, 812 F.3d 637 (8th Cir. 2016).